**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| Tekever Tecnologias de Informacao, S.A., et al.,) | |
| ) | |
| Plaintiffs,  ) | |
| ) | |
| v.  ) | Civil Action No. 1:23-cv-838 (CMH/WEF) |
| ) | |
| Pedro Sinogas, et al.,  ) | |
| ) | |
| ) | |
| Defendants.  ) | |
| _____ ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiffs Tekever Tecnologias de Informacao, S.A. ("Tekever TI"), and Tekever Holdings, S.A. ("Tekever Holdings") (collectively, "Plaintiffs") Motion for Default Judgment as to Count I and Count V of the Complaint and to Dismiss Defendants' Counterclaims pursuant to Federal Rules of Civil Procedure 41(b) and 55(b)(2). (Dkt 69).[1]  Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned United States Magistrate Judge is filing with the Court these proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.  For the reasons set forth below, the undersigned recommends **GRANTING** Plaintiffs' Motion for Default Judgment as to Count I, **DENYING** Plaintiffs' Motion for Default Judgment as to Count V and **GRANTING** Plaintiffs' Motion to Dismiss Defendants' Counterclaims.[2]

---

[1]    Following entry of a default judgment, Plaintiffs seek dismissal of Counts II, III and IV. (Dkt. 69).

[2]    Relevant filings before the Court include the Complaint (Dkt. 1) ("Compl."); Answer (Dkt. 19) ("Ans."); Amended Answer (Dkt. 21) ("Amend. Ans."); Memorandum in Support of

## I.    Procedural Background

On June 28, 2023, Plaintiffs Tekever TI and Tekever Holdings filed this lawsuit against Defendants Pedro Sinogas, Tekever, Inc., NameCheap, Inc., Tekever.com, and John Does 1-10, alleging trademark cyberpiracy under the Anticybersquatting Consumer Protection Act (ACPA) (Count I),[3] trademark infringement under the common law (Count II), false association under the Lanham Act (Count III), breach of fiduciary duty and self-dealing (Count IV), and fraud on the United States Patent and Trademark Office (USPTO) (Count V). (Compl. ¶ 62–93).  Plaintiffs are Portuguese corporations that offer unmanned aerial systems technologies and services around the world.  (Compl. ¶ 23–29).  Defendant Pedro Sinogas was a founding executive of Plaintiff Tekever TI's predecessor company and held various management positions at Tekever TI from 2001 until 2018, when Tekever TI discovered Sinogas' diversion of $5 million of company funds for his personal use and as a result, Sinogas was suspended from his duties by the Lisbon Commercial Court and subsequently all ties between him and Plaintiffs were severed. (Compl. ¶ 30–36). Thereafter, Plaintiff alleges that Sinogas, for his own commercial purposes, wrongfully and without permission established a new company with an identical name to Plaintiffs ("Tekever, Inc.") and filed a trademark application with the USPTO for the mark "TEKEVER." (Compl. ¶ 38, 41, 54, 55–56).  Plaintiffs assert that this is despite Sinogas' knowledge that Plaintiffs have long had legal rights in and have long used the "TEKEVER" mark. (Compl. ¶ 39, 45). Plaintiffs also allege that Sinogas, despite registering the domain "Tekever.com" on behalf of and for the

---

Plaintiff's Motion to Dismiss (Dkt. 25); Memorandum in Support of Plaintiff's Motion to Compel (Dkt. 46); Request for Entry of Default as to Defendant Tekever, Inc. (Dkt. 60); Request for Entry of Default as to Defendant Pedro Sinogas (Dkt. 67); Memorandum in Support of Plaintiffs' Motion for Default Judgment as to All Defendants and Motion to Dismiss Counterclaims (Dkt. 70) ("Mem. Supp.") and all attachments and exhibits submitted with those filings.

[3]     15 U.S.C. § 1125(d).

exclusive benefit of Plaintiffs in 2000, never transferred the domain to Plaintiffs. (Compl. ¶ 32, 40, 51–52).

On August 1, 2023, Plaintiffs filed an affidavit of service for a summons and complaint served on Tekever, Inc., which confirmed that Defendant Tekever, Inc. was served on July 12, 2023. (Dkt. 14).  Also on August 1, 2023, Defendants Sinogas and Tekever, Inc., by counsel Shane Rumbaugh, submitted a Motion for Extension of Time to answer the Complaint to September 1, 2023, which indicated that Plaintiffs' counsel had consented to the Motion. (Dkt. 16).  The Court granted Defendants' Motion on August 3, 2023. (Dkt. 17).

On September 1, 2023, Defendants Sinogas and Tekever, Inc. filed an answer to the Complaint. (Dkt. 19).  Sinogas and Tekever, Inc. subsequently filed an Amended Answer to the Complaint on September 22, 2023. The original and Amended Answers are identical with respect to their responses to the Complaint's allegations. (*Compare* Answer at 1–8 *with* Amend. Ans. at 1-8).  The Amended Answer also asserts counterclaims alleging that (1) Sinogas and Tekever, Inc. did not violate any rights or laws and that Sinogas was the rightful owner of the "Tekever.com" domain name and seeking declaratory judgment to such effect, and (2) Plaintiff Tekever Holdings committed fraud on the USPTO and seeking abandonment of Tekever Holdings' pending trademark application.  (Amend. Ans. at 9–17).

Plaintiffs voluntarily dismissed without prejudice Defendant Namecheap, Inc., on October 5, 2023. (Dkt. 22). Plaintiffs filed a Motion to Dismiss Defendants' counterclaims for failure to state a claim on October 13, 2023.[4] (Dkt. 24).  Defendants filed a memorandum in opposition to

---

[4]     In their brief in support of their Motion to Dismiss, Plaintiffs noted that:
    On July 13, 2023, after this case was filed, the Lisbon Commercial Court in Lisbon, Portugal granted an injunction against Defendant Sinogas ordering, inter alia, (i) that Sinogas refrain from removing Plaintiffs' access to the Tekever.com domain name or committing any other harmful act to the Plaintiffs by reference to that

Plaintiff's Motion on October 26, 2023, and Plaintiffs filed a reply on November 1, 2023.  (Dkts. 27, 28). The Honorable Claude M. Hilton, Senior United States District Judge, denied Plaintiffs' Motion on December 8, 2023. (Dkt. 29). Plaintiffs then answered Defendants' counterclaims on December 26, 2023. (Dkt. 30). The Court entered a scheduling order on January 3, 2024, setting the discovery deadline as May 10, 2024, and the Final Pretrial Conference on May 16, 2024. (Dkt. 31). After reviewing the parties' proposed Joint Discovery Plan and holding an initial pretrial conference on January 17, 2024, the undersigned entered a Rule 16(b) scheduling order on January 18, 2024. (Dkt. 34).

On April 26, 2024, Plaintiffs filed a Motion to Compel the Defendants' production of certain documents and their appearance at noticed depositions in Virginia on May 9 and 10. (Dkt. No. 45).  In their memorandum in support, Plaintiffs stated that they had informed Defendants on April 19, 2024 that their productions were deficient, to which Defendants apparently did not respond. (Dkt. No. 46 at 2). Plaintiffs also asserted that Plaintiffs followed up on April 22 and April 23 with requests to confer, and on April 23, Defendants agreed to confer on April 25. Plaintiffs also stated that during the parties' April 25th video conference, "Defendants' counsel

---

domain; (ii) that Sinogas provide Plaintiffs with the current password and other details of the access account to the Tekever.com domain; (iii) that Sinogas refrain from creating legal persons and registering trademarks with the term "Tekever"; and (iv) that Sinogas refrain from causing any further commercial damage to the Plaintiffs. In reaching its decision, the Lisbon Commercial Court found Defendant Sinogas has and continues to breach his fiduciary duties to Plaintiffs including by infringing the TEKEVER Marks and through the wrongful registration and withholding of the Tekever.com domain name.

(Dkt. 25 at 3).

Because these facts arose after the initiation of this suit and were not asserted in the Complaint, the undersigned did not consider them in evaluating whether the Complaint adequately stated a claim upon which relief could be granted.

confirmed that he was expecting additional responsive documents from Defendants, but that he had not received the expected additional documents." (*Id*.)   Plaintiffs characterized Defendants as "apparently having gone into hiding." (*Id*.)

On May 1, 2024, Defendants' counsel Shane Rumbaugh and Nicholas Raffaele filed a Motion to Withdraw as Defendants' counsel in this matter. (Dkt. 48).  In support, Defendants' counsel asserted that Defendants "have been given reasonable warning that Withdrawing Counsel would withdraw unless [previously agreed upon] obligations are fulfilled. Further, the [continued] representation will result in an unreasonable burden on Withdrawing Counsel and [representation] has been rendered unreasonably difficult by Defendants." (Dkt. 48-1 at 2).  Defendants' counsel provided notice to Defendants of counsel's intent to withdraw on April 24, 2024, April 26, 2024, April 30, 2024, and May 1, 2024 and counsel emailed to Defendants a filed copy of counsel's Motion to Withdraw and supporting memorandum.  (*Id*.)  Plaintiffs' counsel did not oppose the Motion. (*Id.*)

Having received no opposition or response to Plaintiffs' April 26 Motion to Compel, the undersigned granted the Motion to Compel on May 3, 2024, and ordered a  hearing on the Motion to Withdraw at which Mr. Sinogas and a representative of Tekever, Inc. were ordered to appear. (Dkt. 50).  That hearing was held on May 10, 2024, at which counsel for all parties appeared, as well as Defendant Sinogas on behalf of himself and Tekever, Inc. (Dkt. 55).  The undersigned granted counsel's motion to withdraw, but ordered Tekever, Inc. to retain substitute counsel as required by law[5] and warned that failure to do so could result in consequences such as default being entered against Tekever, Inc. for failure to defend.  (*Id*.)  The parties, including Mr. Sinogas,

---

[5]      In  federal  judicial  proceedings,  corporations  are  required  to  appear  by  counsel.  *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993).

were further ordered to appear for an in-person status conference before the undersigned on May 24, 2024, although any substitute counsel for Defendants was permitted to appear on Defendants' behalf. (*Id.*)  Neither Defendants nor any substitute counsel appeared at the hearing on May 24, 2024. (Dkt. 59). Defendants also did not make any pretrial filings as required by the District Judge's January 3, 2024 Scheduling Order. (Dkts. 31, 66, 67-1 ¶ 11). The clerk subsequently entered default as to Tekever, Inc. on May 30, 2024.  Mr. Sinogas did not appear before District Judge Hilton at the Final Pretrial Conference (which was continued twice) on June 7, 2024, and the clerk entered default as to Mr. Sinogas on June 18, 2024.  Plaintiffs also assert that they have had no contact with either Defendant since May 10, 2024, despite several attempts. (Mem. Supp. at 15; Dkt. 67–1 ¶¶ 13-14)

On July 18, 2024, Plaintiffs moved for entry of default judgment against Defendants Mr. Sinogas and Tekever, Inc. as well as for dismissal of Defendants' counterclaims. (Dkt. 69).  The undersigned held a hearing on Plaintiffs' Motion on August 16, 2024, at which Plaintiffs' counsel appeared and presented argument in support of their Motion, but neither Mr. Sinogas, Tekever, Inc., nor any substitute counsel for Defendants appeared.  (Dkt. 76).  Per the undersigned's request, on August 22, 2024, Plaintiffs filed a Notice of Supplemental Authority with respect to the remedies requested by Plaintiff. (Dkt. 77).  Plaintiffs are seeking default judgment only on Counts I and V of the Complaint and state that they plan to seek dismissal of Counts II, III, and IV after resolution of their Motion. (Mem. Supp. at 2).  Additionally, Mr. Sinogas and Tekever, Inc. are the only defendants remaining in this case, as NameCheap, Inc. was previously voluntarily dismissed by Plaintiffs and no John Does were identified or served. (*Id*. at 1).

The undersigned took the matter under advisement to issue this Report and Recommendation.

## II.     Facts Alleged in the Complaint and Deemed Admitted

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend[.]" *See* FED. R. CIV. P. 55(a), (b).   Based on the failure of the Defendants to defend this action within the meaning of Rule 55,[6] the Clerk entered default as to the Defendants. (Dkts. 60, 67).    A defendant in default admits the factual allegations in the complaint. *See GlobalSantaFe Corp. v. Globalsantafe.com,* 250 F. Supp. 2d 610, 613 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim.");   *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736, 739 (E.D. Va. 2014) (holding that when a defendant has defaulted, the well-pleaded, non-conclusory allegations of facts set forth in the plaintiff's complaint are deemed admitted) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).   In this case, the following facts alleged in the Complaint are deemed admitted.

Plaintiffs Tekever TI and Tekever Holdings are Portuguese Corporations doing business in

---

[6]       Where, as here, a defendant has previously appeared in an action but then "ceased participating in and defending [the] case," by, *inter alia*, "fail[ing] to file any pre-trial submissions as required by the Court's Scheduling Order" and "fail[ing] to appear for the Court's final pretrial conference," the defendant has "clearly failed to 'otherwise defend' [the] case" and may be found in default. *Allied World Specialty Ins. Co. v. Design Build Mech. Corp.*, No. 1:15-cv-952-TSE-TCB; 2016 U.S. Dist. LEXIS 105664, *5-6 (E.D. Va. July 21, 2016) (report and recommendation of default judgment), *adopted*, 2016 U.S. Dist. LEXIS 105546 (E.D. Va. Aug. 9, 2016); *accord Johnson v. Robert Shields Interiors, Inc*., No. 1:15cv820-AJT-TCB; 2016 U.S. Dist. LEXIS 62515, *5-6 (E.D. Va. May 11, 2016) (finding defendant in default due to a failure to appear for final pretrial conference and failure to obey scheduling order or other pretrial order). Additionally, a corporate defendant who, after withdrawal of prior counsel, fails to appear by substitute counsel also fails to "otherwise defend" an action within the meaning of Rule 55(a). *See, e.g*, *1800 Diagonal Lending, LLC v. Am. Int'l Holdings Corp.,* No. 1:23cv1150-DJN-JFA; 2024 U.S. Dist. LEXIS 71898, *9-10; 2024 WL 1647246 (E.D. Va. Feb. 29, 2024); City of New York v. Michalis Pawn Shop, LLC*, 645 F.3d 114, 129-30 (2d Cir. 2011).

the unmanned systems technology and services industry. (Comp. ¶ 1, 19). Plaintiffs are leading drone-based maritime and land surveillance providers in Europe, also operating in North America, South America, and Asia. (Compl. ¶¶ 20, 23). Tekever TI was originally established on January 4, 2001 as Tekever – Desenvolvimento de Software, Lda. ("Tekever – Desenvolvimento") but was restructured in 2005 and changed its corporate name to Tekever TI. (Compl. ¶ 3). Tekever Holdings was created as a "spin-off" from Tekever TI in 2020.  (Compl. ¶ 3, 32).  For over 20 years, Plaintiffs have extensively used and advertised their goods and services under the name "TEKEVER" such that the "TEKEVER" mark has come to be recognized and relied upon by the trade and the public as identifying the Plaintiffs, their unmanned aerial systems, and related offerings. (Compl. ¶ 29, 72).  Plaintiff's current offerings include the TEKEVER AR3, AR4, and AR5 unmanned aerial systems, as well as other goods and services under the "TEKEVER" mark in the IT, aerospace, defense, and security sectors.  (Compl. ¶ 23–25).  Plaintiffs also serve a number of well-known governmental and supra-national entities, such as the Ministries of Defense and law enforcement agencies in NATO countries, the British Government, the United States National Aeronautics and Space Administration (NASA), the United Nations, and the European Maritime Safety Agency ("EMSA"). (Compl. ¶ 26–28).  Plaintiff Tekever Holdings is the owner of U.S. Trademark Application Serial No. 97/686,954 for TEKEVER.COM, Application Serial No. 97/686,950 for TEKEVER and Application Serial No. 97/686,955 for TEKEVER (stylized).[7]

---

[7]     All three of Tekever Holdings' applications are currently pending, not completed registrations, and were filed in November 2022. *See* Status Search SN 97686955, U.S. PATENT & TRADEMARK OFF.,
https://tsdr.uspto.gov/#caseNumber=97686955&caseSearchType=US_APPLICATION&caseTy pe=DEFAULT&searchType=statusSearch (last visited Sept. 3, 2024); Status Search SN 9768950, U.S. PATENT & TRADEMARK OFF.,
https://tsdr.uspto.gov/#caseNumber=97686950&caseSearchType=US_APPLICATION&caseTy pe=DEFAULT&searchType=statusSearch (last visited Sept. 3, 2024); Status Search SN 9768695, U.S. PATENT & TRADEMARK OFF.,

(Compl. ¶ 22).

Defendant Mr. Sinogas was one of the founding partners of Tekever – Desenvolvimento (which later became Plaintiff Tekever TI), along with Vitor Cristina and later-on, Ricardo Mendes. (Compl. ¶ 30).   Mr. Sinogas held various management and fiduciary positions at Tekever – Desenvolvimento and Plaintiff Tekever TI, including as chief executive officer and director. (Compl. ¶ 31).   In 2018, Tekever TI discovered that Mr. Sinogas had severely breached his fiduciary duties to Tekever TI by diverting the equivalent of over $5,000,000 from Tekever TI (and its subsidiaries) for his own personal use. (Compl. ¶ 34).   Funds were diverted through direct transfers to his bank accounts and through purchases of art, a new car, a boat, and personal vacations. (Compl. ¶ 34).   Due to the severity of the breaches, on September 27, 2018, the Lisbon, Portugal Commercial Court suspended Mr. Sinogas from his duties at Tekever TI, on the grounds of breach of fiduciary duties. (Compl. ¶ 35).   Subsequently, all ties between Tekever TI and Mr. Sinogas were severed. (Compl. ¶ 36).

After his suspension from Tekever TI, Mr. Sinogas formed the Delaware corporation "Tekever, Inc." (Compl. ¶¶ 5, 38).   On February 4, 2022, Tekever, Inc. filed U.S. Trademark Application No. 97/253,347[8] for the mark "TEKEVER," seeking registration with respect to unmanned aerial vehicles (UAV), which are among some of the goods that Plaintiffs offer. (Compl. ¶ 41–43; Dkt. 1-1 at PageID#17).   Tekever, Inc.'s Trademark Application, at the time this action was commenced, asserted a first-use date of January 4, 2001.   (Compl. ¶ 44; Dkt 1-2 at

---

https://tsdr.uspto.gov/#caseNumber=97686954&caseSearchType=US_APPLICATION&caseTy pe=DEFAULT&searchType=statusSearch (last visited Sept. 3, 2024).

[8]      Tekever, Inc.'s trademark application also remains pending and is not a completed registration. *See* Status Search SN 97253347,
https://tsdr.uspto.gov/#caseNumber=97/253,347&caseSearchType=US_APPLICATION&caseT ype=DEFAULT&searchType=statusSearch (last visited Sept. 3, 2024).

PageID#34).  In support of that first-use date, Tekever, Inc. submitted to the USPTO several brochures for Plaintiffs' TEKEVER AR3, AR4, and AR5 UAVs and Plaintiffs' TEKEVER ATLAS analytic tool. (Compl. ¶ 46–48; Dkt. 1-2 at PageID 20–29).  Tekever, Inc.'s Trademark Application was also signed by Mr. Sinogas. (Compl. ¶ 50). Plaintiffs never granted permission or authorization to either Defendant to use the "TEKEVER" mark or to file a U.S. trademark application for the "TEKEVER" mark. (Compl. ¶ 55).

Mr. Sinogas first registered the "Tekever.com" domain on November 20, 2000 on behalf of and for the exclusive benefit of Tekever TI's predecessor company, Tekever – Desenvolvimento. (Compl. ¶ 32).  Continuously and for the following two decades, Plaintiffs used the "Tekever.com" domain to advertise their goods and services and the domain has been the property of Plaintiffs. (Compl. ¶ 33).  Mr. Sinogas never transferred the "Tekever.com" domain to Plaintiffs. (Compl. ¶ 51).  Finally, the name of the domain registrant of "Tekever.com" is masked by an Iceland-based privacy service. (Compl. ¶ 53).

### III.   Jurisdiction and Venue

In this case, the Court must have both subject matter jurisdiction and personal jurisdiction over the Defendants, and venue in this judicial district must be proper before the Court can render a default judgment.

### A.  _Subject Matter Jurisdiction_

With respect to Counts I and V, Plaintiffs bring this cause of action pursuant to the ACPA (15 U.S.C. § 1125 _et seq_.) and the Lanham Act,[9] which are federal statutes.  Therefore, the

---

[9]     As discussed _infra_, Plaintiffs do not clearly specify what law Count V arises under, although that defect is immaterial as to this Court's subject matter jurisdiction because (1) the Court would have supplemental jurisdiction over Count V pursuant to 28 U.S.C.§ 1367(a), and (2) regardless, Count V does not state a valid claim and the undersigned has considered it as a request for additional relief as to Count I.

undersigned finds the Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This Court also has subject matter jurisdiction pursuant to both 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a), which grant jurisdiction to federal district courts for civil actions arising under federal trademark law.

     B. *Personal Jurisdiction*

     The undersigned finds that this Court has personal jurisdiction over the Defendants. Defendants Sinogas and Tekever, Inc. regularly transact business, and have committed a substantial portion of the alleged acts that are the subject of the present suit, in this district and thus are subject to the Court's personal jurisdiction consistent with the Virginia Long Arm statute and the Due Process Clause of the federal Constitution.[10]  In addition, personal jurisdiction may be established by the Defendants' waiver or abandonment of any objection over lack of personal jurisdiction.  *See Mickalis Pawn Shop*, 645 F.3d at 133 (collecting cases).  Here, prior to defaulting, both Defendants appeared in this Court through counsel and answered the Complaint. Moreover, in both their original and amended answers, Defendants stated that they "will not contest that this Court presently has personal jurisdiction." (Compl. ¶ 10–11).  Defendants have never objected to the personal jurisdiction of this Court and there is nothing in the record to suggest this Court may not properly exercise personal jurisdiction over both Defendants.  *See Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 46 (4th Cir. 1968) (citing Fed. R. Civ. P. 12(h)) ("since no attack on personal jurisdiction was made in a pre-answer motion or in the answer itself, the defense of lack of jurisdiction over the person is waived").  Thus, the Court has personal jurisdiction over

---

[10]    *See* VA Code Ann. §§ 8.01-328.1(A)(1), (3); *John G. Kolbe, Inc. v. Chromodern Chair Co., Inc.*, 211 Va. 736, 740 (1971) ("It is manifest that the purpose of Virginia's long arm statute is to assert jurisdiction over nonresidents who engage in some purposeful activity in this State to the extent permissible under the due process clause.").

Defendants.

The undersigned finds that this Court has jurisdiction with respect to the domain "Tekever.com" by way of Mr. Sinogas, as required by the ACPA.   A trademark cyberpiracy action under the ACPA may be undertaken either against an identifiable infringing person (the domain name registrant) or, where such a person is not ascertainable or not subject to personal jurisdiction, against the domain name itself in an *in rem* action.  *See* 15 U.S.C. §§ 1125(d)(1)(A), (1)(D), (2)(A). Plaintiffs stated in their Complaint that they reasonably "believe[d]" the (infringing) domain name registrant of "Tekever.com" to be Mr. Sinogas or Tekever, Inc., but they "[could not] be certain due to registrants use of . . . privacy service.," and asserted *in rem* jurisdiction under 15 U.S.C. § 1125(d)(2)(C)(i).   However, Mr. Sinogas answered the Complaint's allegations by confirming that he was in fact the domain name registrant of "Tekever.com" and as discussed above, the Court has personal jurisdiction over Mr. Sinogas, who is a named defendant in this suit. (Compl. ¶ 64; Ans. ¶ 14–16; Amend. Ans ¶ 14–16). Therefore, there is no basis—and no need—to find *in rem* jurisdiction under § 1125(d)(1)(A).

### C.   *Venue and Service*

The undersigned also finds that venue is proper in this district. A substantial part of the events giving rise to the claim occurred in this district, thus conferring venue under 28 U.S.C. § 1391(b)(2).  (Compl ¶ 18).  Additionally, venue is a personal privilege of the defendant that may be waived, and Defendants waived any objection to venue when they answered the Complaint with an admission that "venue is currently proper in this Court." (Ans. ¶ 18; Amend. Ans. ¶ 18); FED. R. CIV. P. 12(h); *Young Again Products, Inc. v. Acord*, 459 F. Appx. 294, 306 (4th Cir. 2011) (unpublished).

In addition, the undersigned finds no defect in service on Defendants.  Plaintiffs filed an

affidavit of service for summons served on Tekever, Inc. on July 12, 2023. (Dkt. 14). And before

defaulting, each Defendant answered the Complaint without challenging the sufficiency of service,

which under the Federal Rules, again constitutes a waiver of such a defense. FED. R. CIV. P. 12(h);

*John C. Grimberg Co., Inc. v. Hiscox Ins. Co. Inc.,* No. 1:22-cv-338-AJT-IDD, 2023 WL 8539539,

at *2 (E.D. Va. Oct. 19, 2023), *R&R adopted,* 2023 WL 8654376 (Dec. 13, 2023).

### IV.    Fed. R. Civ. P. 12(b)(6) Analysis of Plaintiffs' Cybersquatting Claim (Count I)

Before entering default judgment, the Court must evaluate Plaintiffs' Complaint against

the standards of Fed. R. Civ. P. 12(b)(6) to ensure that the Complaint properly states a claim.

*GlobalSantaFe Corp. v. Globalsantafe.com,* 250 F. Supp. 2d at 612 n.3. Under the 12(b)(6)

standard, the complaint must contain sufficient factual matter to state a claim to relief that is

plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The court will "assume the

facts alleged in the complaint are true and draw all reasonable factual inferences in [the plaintiff's]

favor," *Burbach Broad Co. of Delaware v. Elkins Radio Corp.,* 278 F. 3d 401, 406 (4th Cir. 2002),

but conclusory allegations or arguments need not be accepted.  *See Labram v. Havel,* 43 F. 3d 918,

921 (4th Cir. 1995).

Plaintiffs have brought a cause of action for cybersquatting in violation of the ACPA, 15

U.S.C. § 1125(d).  (Amend. Compl. ¶¶ 1, 62–67).  For the reasons set forth below, the undersigned

finds that Plaintiffs have properly alleged a cybersquatting claim.

Section 1125(d)(1) creates civil liability for registering (or re-registering),[11] trafficking in,

or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a "bad

---

[11]     *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.,* 58 F. 4th 785, 797 (4th Cir. 2023) ("[T]he term 'registers' and its derivatives extend to each registration of a domain name, including the initial registration and any subsequent re-registration. Where a successive registration of a disputed domain name postdates the trademark registration of the corresponding mark, the mark owner may show that the successive registration was done in bad faith.").

faith intent to profit from that mark."  15 U.S.C. § 1125(d)(1)(A).  Thus, to sufficiently plead an ACPA violation, a plaintiff must allege the plaintiff's ownership of a valid and protectable trademark, the registrant's registration, trafficking in, or use of a domain name that is "identical or confusingly similar to, or dilutive of" plaintiff's distinctive mark, and the registrant's bad faith intent to profit from the mark or domain name.  15 U.S.C. § 1125(d)(1)(A); *see People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001); *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011).

A.  The "TEKEVER" Mark is Valid, Protectable, and Distinctive.

"A necessary predicate to an ACPA action is that a plaintiff has a protectable interest in a trademark."  *BlackRock, Inc. v. BALCKROCK.com*, No. 1:22-cv-1002-TSE-JFA, 2022 WL 17684800, at *5 (E.D. Va. Nov. 18, 2022), *report and recommendation adopted*, No. 1:22-CV-1002, 2022 WL 17672497 (E.D. Va. Dec. 13, 2022) (citing *Wagner v. lindawagner.com*, 202 F. Supp. 3d 574, 580–81 (E.D. Va. 2016)).  A plaintiff can establish they have a protectable interest in a mark through showing ownership of a federal trademark registration or, for unregistered marks, under common law by establishing secondary meaning.  *See Wagner*, 202 F. Supp. 3d at 580 (holding that because plaintiff never registered her mark, the only basis upon which it can be protected would be under common law by establishing secondary meaning).  Thus, a party may assert a protectable interest in an unregistered trademark if the mark is (1) used in commerce, and (2) sufficiently distinctive.  *See Int 7 Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003); *Emergency One, Inc. v. Am. Fire Eagle Engine Co*., 332 F.3d 264, 267 (4th Cir. 2003) ("At common law, trademark ownership is acquired by actual use of the mark in a given market."); *Hyrdo-Dyanmics, Inc v. George Putnam & Co., Inc.*, 811 F.2d 1470, 1472 (Fed. Cir. 1987) ("The common law . . .  require[s] that trademark

14

ownership be accorded to the first bona fide user").

Here, Plaintiffs do not have a protectable interest in the "TEKEVER" mark by virtue of ownership of a federal trademark *registration* because they are merely the owners of a trademark *application*. However, Plaintiffs have established that they have a protectable interest in the "TEKEVER" mark through their common law ownership and use of the mark. Plaintiffs have extensively used and advertised their goods and services under the name "Tekever" (which they were the first to use in commerce)[12] for over 20 years such that the mark has been recognized and relied upon by the trade and the public globally as identifying the Plaintiffs, their unmanned aerial systems, and related offerings.[13] (Compl. ¶¶ 29, 32, 45, 72).

As for distinctiveness, trademarks may be considered "fanciful," "arbitrary," or "suggestive," which are all inherently "distinctive." *Venetian Casino Resort v. Venetiangold.Com*, 380 F. Supp. 2d 737, 742 (E.D. Va. 2005) (citing *Sara Lee Corp. v. Kayser–Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996)). "Fanciful marks are, in essence, made-up words expressly coined for serving as a trademark." *Sara Lee Corp*, 81 F.3d at 464. Trademarks may also be considered merely "descriptive," which is not inherently distinctive, but is distinctive if the mark acquires

---

[12]     The undersigned finds that the well-pleaded facts of the Complaint and all reasonable inferences drawn in Plaintiffs' favor from them establish Plaintiffs' first use of the "TEKEVER" mark. Tekever – Desenvolvimento was formally established on January 4, 2001. (Compl. ¶ 32). Since that date, Plaintiffs have used the "TEKEVER" mark globally for more than two decades in connection with unmanned aerial systems and related goods and services, including via advertisement on the "Tekever.com" domain. (Compl. ¶¶ 33, 45, 72). Moreover, there is no suggestion that Defendants have used the "TEKEVER" mark prior to the 2022 creation of Tekever, Inc.

[13]     Indeed, although irrelevant for purposes of the undersigned's analysis, Defendants amended their application for the "TEKEVER" mark after the initiation of this suit to assert that they merely "ha[ve] a bona fide *intention* to use the [] mark in commerce and had a bona fide *intention* to use the [] mark in commerce as of the application filing date," rather than any actual use. (Mem. Supp. at 5 n.2).

"secondary meaning," i.e., "if in fact a substantial number of present or prospective customers understand the designation" to refer to a particular business enterprise." *Id*. (quoting *Perini Corp. v. Perini Constr., Inc*., 915 F.2d 121, 125 (4th Cir. 1990)). "[E]vidence of intentional, direct copying establishes a prima facie case of secondary meaning" and therefore distinctiveness. *Larsen v. Terk Techs. Corp*., 151 F.3d 140, 148 (4th Cir. 1998).

Plaintiff's "TEKEVER" mark is indeed distinctive. "Tekever" is a uniquely created name that is neither a word in English, nor in Portuguese. Thus, "Tekever" is "fanciful" and inherently distinctive, including at any time the "Tekever.com" domain was re-registered and for the entire duration of Plaintiffs' twenty-plus year usage of the mark, even if the mark may not have been in use when the domain was first registered in 2000.[14]   (Compl. ¶ 32; Mem Supp. at 13). Additionally, it is reasonable to infer that, given Mr. Sinogas' court-ordered suspension from and eventual severance of relations with Plaintiffs, and his conduct that preceded those events, Mr. Sinogas knowingly, intentionally, and wrongfully copied Plaintiffs' "TEKEVER" mark when he created "Tekever, Inc." and filed a trademark application for the very same "TEKEVER" mark in the very same industry. (Compl. ¶¶ 34–36, 38–39, 42–44). Moreover, Plaintiffs' widespread use of the "TEKEVER" mark in trade around the world, including in serving well-known governmental entities in the United States and Great Britian, as well as supra-national organizations such as the North Atlantic Treaty Organization and the European Union, establishes that a substantial number of present or prospective customers understand the "TEKEVER" mark

---

[14]   The ACPA also requires that the mark be distinctive at the time of the registration of the domain name. 15 U.S.C.§ 1125(d)(1)(A)(ii)(I). In the alternative, the Plaintiff may prove the distinctiveness of the mark at the time the domain name is re-registered, trafficked in, or used by the Defendant. *See Prudential*, *infra* note 13, at 797; *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1219 (9th Cir. 2010) ("The statute says 'registers, traffics in, or uses' with 'or' between the terms, so use alone is enough to support a verdict, even in the absence of violative registration or trafficking.")

to refer to Plaintiffs' businesses. (Compl. ¶¶ 26-28).  All of this further establishes the distinctiveness of Plaintiffs' mark.

Based on the foregoing, Plaintiffs' consistent and prominent use of the "TEKEVER" mark in commerce renders the mark distinctive, as it has clearly acquired secondary meaning, and entitles the mark to common law protection.  Plaintiffs' continuous, 20-year use of the "Tekever.com" domain that incorporates their trademark and is used to identify the source of goods or services is also sufficient to establish common law trademark rights.  (Compl. ¶ 33); *See Tober v. APROV.COM*, No. 1:07-cv-1252 LMB/TCB, 2008 WL 4364221, at *2 (E.D. Va. Sept. 23, 2008) (recognizing common law trademark rights where a trademark is used in a domain, if that mark "is used to identify the source of goods and services").  For these reasons, the undersigned finds Plaintiffs possess valid and protectable rights in their distinctive mark and are entitled to enforce the provisions of Section 1125(d) against any registrant that violates those rights.

### B.   *"Tekever.com" is Confusingly Similar to Plaintiffs' "TEKEVER" Mark*

The undersigned finds that the "Tekever.com" domain is "identical or confusingly similar" to Plaintiffs' "TEKEVER" mark.  *See* 15 U.S.C. § 1125(d)(1)(A)(ii); *Doughney*, 263 F.3d at 367.

First, the "TEKEVER" mark is distinctive and was distinctive at the time the "Tekever.com" was re-registered and at all times since Plaintiffs began using the mark.

Second, the infringing domain name does not need to be identical to the registered mark, only confusingly similar.  *See* 15 U.S.C. § 1125(d)(1)(A)(ii)(I); *see also Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) ("In this case, the Court finds that 'Volvo' is the dominant portion of volvospares.com and that volvospares.com is therefore confusingly similar to VOLVO"). The confusing similarity standard is satisfied where a domain name is similar to a protected mark such that a "reasonable consumer 'might think they were used,

approved, or permitted by [the plaintiff].'" *Venetian Casino Resort*, 380 F. Supp. 2d at 743

(quoting *Harrods, Ltd. v. Sixty Internet Domain Names*, 157 F. Supp. 2d 658, 677 (E.D. Va. 2001),

*rev'd on other grounds*, 302 F.3d 214 (4th Cir. 2002)). Stated differently, a confusingly similar

domain name and mark are "so similar in sight, sound and meaning that they could be confused."

*Id.* (internal quotation marks and citation omitted).  Moreover, courts do not consider top-level

domains, such as ".com," to determine whether a domain name is similar or identical to a mark

under the ACPA. *See Jewels Connection, Inc. v. OroClub.com*, No. 1:20-cv-0364-TSE-MSN,

2020 WL 5099555, at *3 (E.D. Va. Aug. 10, 2020), *report and recommendation adopted*, No.

1:20-CV-0364-TSE-MSN, 2020 WL 5097515 (E.D. Va. Aug. 28, 2020) ("Here, the mark is

unquestionably almost identical—the only difference between the OROCLUB mark and

OroClub.com is the '.com' suffix. Accordingly, the undersigned finds that defendant domain name

is confusingly similar to the OROCLUB mark.").

Here, as in *OroClub.com*, "the only difference" between the "TEKEVER" mark and

"Tekever.com" is the "com" suffix. (Mem. Supp. at 12); *OroClub.com*, 2020 WL 5099555, at *4.

Undoubtedly, the "dominant or salient" portions of the domain name are identical to the

"TEKEVER" mark, and a reasonable consumer would (rightly) think that "Tekever.com" was used

by Plaintiffs. (Compl. ¶ 33). Accordingly, the undersigned finds that the "Tekever.com" domain

is "identical or confusingly similar" to Plaintiffs' "TEKEVER" mark.

### C.  *Defendants Have Acted with a Bad Faith Intent to Profit from Plaintiffs' Marks*

Finally, the undersigned finds Plaintiffs have demonstrated that Defendants Tekever, Inc.

and Mr. Sinogas have used the "Tekever.com" domain name with a bad faith intent to profit from

Plaintiffs' "TEKEVER" mark.  The ACPA, in pertinent part, prohibits a registrant's "registration,

traffic[king] in, *or* use" of a domain name with a bad faith intent to profit. 15 U.S.C. §

18

1125(d)(1)(A)(ii)(I).  While many ACPA lawsuits are founded upon the registrant's act of registration (or re-registration), the statute does not require such.  Rather, the statutory text's use of a disjunctive "or" means that any one of "registration," "traffic[king]," or "use" is sufficient to make out a violation of the ACPA.  *See DSPT Intern., Inc.*, 624 F.3d at 1219 ("The statute says 'registers, traffics in, or uses', with 'or' between the terms, so use alone is enough to support a verdict, even in the absence of violative registration or trafficking.").  That construction is critical here, while it may be reasonable to infer that *at some point*,[15] Mr. Sinogas re-registered "Tekever.com," the undersigned finds that the Complaint does not plead re-registration after, for example, Plaintiffs' 2018 discovery of Mr. Sinogas' misuse of company funds, such that re-registration could be viewed as done in bad faith.  Nor does the undersigned find that Defendants have "traffic[ked] in" the "Tekever.com" domain.[16]

Nevertheless, the courts have recognized use with intent to profit in bad faith can include the withholding of a domain (including by former employees who registered the domain in their own name) to facilitate the diversion of business from the trademark holder.[17] *See DSPT Intern.,*

---

[15]    A domain is typically registered for a time period between one to ten years and must be renewed if the registrant wishes to keep using the name and any services associated with it, like a website or email service. FAQs for Registrants: Domain Name Renewals and Expiration, ICANN, https://www.icann.org/resources/pages/domain-name-renewal-expiration-faqs-2018-12-07-en (last visited Sept. 4, 2024).

[16]    The ACPA defines the term "traffics in" as "refer[ing] to transactions that include, but are not limited to, sales, purchases, loans, pledges, licenses, exchanges of currency, and any other transfer for consideration or receipt in exchange for consideration." 15 U.S.C. § 1125(d)(1)(E). The undersigned observes that the complaint does not allege any transfer, for or in exchange for consideration or otherwise, by Defendants at all.

[17]    The undersigned recognizes that this case may present a broad understanding of "use," but it is one that is nonetheless supported by case law and the circumstances indicating that Defendants withholding of the domain served as an instrumentality within a scheme to profit from Plaintiffs' marks.

*Inc.*, 624 F.3d at 1216–20 (recognizing use in bad faith can include to generate profit from the mark's goodwill as well as to create "leverage in a business dispute"); *see also AR2, LLC v. Rudnick*, 2014 WL 3887907, at *7 (S.D. Fla. Aug. 7, 2014).  Plaintiffs have sufficiently plead such withholding with intent to profit in bad faith here.

Under the ACPA, bad faith intent may be considered by weighing nine factors:

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

15 U.S.C. § 1125(d)(1)(B)(i).  The factors are given to courts as a guide and need not be

exhaustively considered in every case. *Lamparello v. Falwell*, 420 F.3d 309, 319–20 (4th Cir. 2005). Indeed, "the most important grounds for finding bad faith 'are the unique circumstances of th[e] case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute.'" *Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 268 (4th Cir. 2001) (quoting *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 499 (2d Cir. 2000)).

As to the first factor, Plaintiffs have established that Defendants have no protectible rights in the "TEKEVER" name or the "Tekever.com" domain name and that Plaintiffs have never granted them permission to use either TEKEVER mark or "Tekever.com" domain. (Mem. Supp. 10; Compl. ¶¶ 32, 45, 55, 89). Moreover, Mr. Sinogas registered the domain "Tekever.com" on November 20, 2000 on behalf of and for the exclusive benefit of Tekever – Desenvolvimento, which was formally established shortly after that date, on January 4, 2001.[18] (Compl. ¶ 32).

With regard to the second and fifth factors, "Tekever.com" closely resembles the legal name of Defendant "Tekever, Inc."  Plaintiffs' use of their mark predates Defendant Tekever, Inc.'s formation by two decades. Any coincidence between Tekever, Inc.'s name and Plaintiffs' mark and the "Tekever.com" domain is clearly the result of a knowing and intentional choice to

---

[18]     That Mr. Sinogas registered "Tekever.com" on behalf of and for the exclusive benefit of Tekever – Desenvolvimento is a fact alleged "upon information and belief," which often cannot be accepted on its face, but may be considered well-pleaded if "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 603 F. 3d 110, 120 (2d Cir. 2010) (citing *Boykin v. Keycorp*, 521 F. 3d 202, 215 (2d Cir. 2008); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The undersigned finds that such a belief is supported by numerous other facts that make the inference reasonable and plausible, such as (1) the passage of just one month between the registration of "Tekever.com" and the creation of Tekever – Desenvolvimento, which shares the "dominant or salient" portion of its name with the domain; and (2) the subsequent 20-year continuous and exclusive use of the domain in commerce by Plaintiffs.

damage or usurp Plaintiffs' goodwill by Mr. Sinogas, who, by virtue of his past positions with Plaintiffs, certainly knew of Plaintiffs' use and rights in their mark and the domain. Moreover, the "dominant or salient" portion of the "Tekever.com" domain name is identical to Plaintiffs' "TEKEVER" mark and the "dominant or salient" portion of Plaintiffs' (as well as Tekever TI's predecessor company) legal names.

With respect to the third factor, neither Mr. Sinogas personally nor Tekever, Inc. have ever made bona fide offerings of goods or services through "Tekever.com." Only Plaintiffs have, and it is Plaintiffs' goods and services that are presently advertised on "Tekever.com," as they have been since 2001. (Compl. ¶ 33).

With respect to the fourth factor, neither Mr. Sinogas personally nor Tekever, Inc. have ever made bona fide noncommercial or fair use of the mark in a site accessible under the "Tekever.com" name. Rather, it has always been Plaintiffs' material that has been posted on "Tekever.com." Moreover, Defendants professed in their trademark application for the "TEKEVER" mark that *they* (not Plaintiffs) had been using the "TEKEVER" mark in commerce since January 4, 2001, contradicting the notion that Defendants have noncommercial or fair use intentions for the "TEKEVER" mark on the "Tekever.com" site. (Compl. ¶ 44; Dkt. 1-2 PageID #34–35).

Most significantly, as to the fifth factor, Mr. Sinogas' continuing failure to return the "Tekever.com" domain to Plaintiffs (Compl. ¶ 60), taken in conjunction with his creation of the identically named "Tekever Inc." (Compl. ¶ 38) and the Defendants' claims about using the "TEKEVER" mark in commerce (Compl. ¶¶ 44, 87), clearly establishes the Defendants' "intent to divert consumers" away from Plaintiffs' businesses in a way that would harm the goodwill of the "TEKEVER" mark and for profit. Indeed, retention of the registration of the "Tekever.com"

domain facilitates these ends because a domain registrant has control over the website content and services (i.e., email) associated with the domain name (even if the registrant voluntarily elects to not exercise that power), which has significant business implications.

Lastly, beyond the ACPA's enumerated factors, the undersigned finds that the remaining facts and circumstances pleaded by Plaintiffs also support Defendants' bad-faith intent to profit from Plaintiffs' "TEKEVER" mark. Having misappropriated large sums of money from the Plaintiffs, Mr. Sinogas was suspended from his position with the company by a Portuguese court and was completely dissociated from Plaintiffs—facts obviously known by Mr. Sinogas. Nevertheless, Mr. Sinogas submitted Plaintiffs' marketing brochures—for what are undisputably Plaintiffs', and not Defendants', products—to the USPTO in support of Defendants' application for the "TEKEVER" mark. (Compl. ¶¶ 46-48, 88; Dkt. 1-2, PageID# 20-29). That conduct, which Mr. Sinogas could not reasonably have believed was permitted after his severance from Plaintiffs and which was in fact *not* permitted, is compelling evidence of his bad faith and his intent to profit. This conduct belies the truthfulness of Mr. Sinogas' declarations under oath to the USPTO that he "believe[d] that the applicant is the owner of the trademark . . . sought to be registered" or that he believed that "no other persons . . . have the right to use the mark in commerce," and thus clearly evinces Mr. Sinogas' intent to deceive the Trademark Office, create confusion as to the source of Plaintiffs' goods, and appropriate the rights and ownership of Plaintiffs' mark for profit. (Dkt. 1-2, PageID# 35); *E. W., LLC v. Rahman*, 896 F. Supp. 2d 488, 507 (E.D. Va. 2012).

Applying the statutory factors to the properly plead allegations in the Amended Complaint, Plaintiffs have sufficiently established a "bad faith intent to profit" from Defendants' use of Plaintiffs' marks. *See Virtual Works, Inc.*, 238 F.3d at 268 (noting the bad faith analysis depends upon "unique circumstances" of each case). For these reasons, the undersigned finds that Plaintiffs

have established a violation of the ACPA.

### V.      Fed. R. Civ. P. 12(b)(6) Analysis of Plaintiffs' Claim of Fraud (Count V)

In addition to their ACPA cybersquatting claim, Plaintiffs seek default judgment on Count

V of the Complaint, which alleges fraud on the U.S. Patent and Trademark Office. (Compl. ¶¶ 85–

93; Mem. Supp. at 14–15).

Under the Lanham Act, to register a trademark an applicant "must affirm, under oath, that

he 'believes' himself to be the owner of the mark sought to be registered and that 'to the best of

[the verifier's] knowledge and belief' no other person has the right to use the mark in commerce."

*Rahman*, 896 F. Supp. 2d at 507 (quoting 15 U.S.C. § 1051(a)(3)(A), (a)(3)(D)). Relatedly, the

Lanham Act "imposes on an applicant" the requirement that they "will not make knowingly

inaccurate or knowingly misleading statements in the verified declaration forming a part of the

application for registration" of a trademark. *Torres v. Cantine Torresella S.r.l.*, 808 F. 2d 46, 48

(Fed. Cir. 1986); *accord Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp.*, 148 F. 3d 417, 420

(4th Cir. 1998). Thus, Defendants' mark will be cancelled as fraudulently obtained if Plaintiff

proves by clear and convincing evidence that Defendants obtained it by knowingly making false,

material representations of fact and Defendants intended to deceive the Patent and Trademark

Office. 15 U.S.C. §§ 1064(3), 1120; *Resorts of Pinehurst*, 148 F. 3d at 420 (quoting *Metro Traffic*

*Control, Inc. v. Shadow Network Inc.*, 104 F. 3d 336, 340 (Fed. Cir. 1997)).

Section 37 of the Lanham Act vests the district court with certain powers concurrent with

the U.S. Patent and Trademark Office to order such cancellations. Namely:

> In any action involving *a registered mark* the court may determine the right to
> registration, order the cancelation of registrations, in whole or in part, restore
> canceled registrations, and otherwise rectify the register with respect to the
> registrations of any party to the action. Decrees and orders shall be certified by the
> court to the Director, who shall make appropriate entry upon the records of the
> Patent and Trademark Office[.]

15 U.S.C. § 1119.

The Ninth Circuit has recently held that "the district court's authority to 'determine the right to registration' and 'rectify the register' includes the power to decide disputes over trademark applications." *BBK Tobacco & Foods LLP v. Central Coast Agriculture, Inc.*, 97 F. 4th 668, 670 (9th Cir. 2024) ("[a] challenge to an application [] necessarily affects the applicant's right to a registration").  However, *BBK Tobacco & Foods LLP* invalidated a trademark application that infringed upon a previously registered mark, whereas here Plaintiffs and Defendants have competing applications with neither registration having been perfected.  The weight of the law, including the plain language of § 1119, appears to limit the district court's authority to rule upon a pending trademark application to actions involving *a registered mark.  Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 831 (E.D. Va. 2001); 4 McCarthy on Trademarks & Unfair competition § 30:113.50 (5th ed. 2024).

Nevertheless, the Lanham Act also vests federal district courts that have jurisdiction over trademark actions, including those arising under the ACPA, the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the [USPTO] or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a) (emphasis added).  Indeed, "the cases recognizing a federal court's authority to order abandonment of a trademark application under § 1116(a), regardless of whether the plaintiff has obtained federal registration of the protected mark, are legion*." Sevex North America v. Ragland*, 2007 WL 9702302, at *6 (N.D. Ga. March 16, 2007) (collecting cases).

Here, the undersigned observes that the Complaint is ambiguous as to what legal theory Count V arises under.  (Compl. ¶¶ 85–93).  While Plaintiffs now argue for default judgment on the

basis of Sections 1064(3) and 1120, they previously sought to dismiss Defendants' facially similar fraud (on the USPTO) counterclaim for failure to state a common law fraud claim. (*Compare* Mem. Supp. at 14–15 *with* Dkt. 25 at 6–8).  More importantly, case law suggests neither theory would constitute a cognizable cause of action under the facts of the case.  Sections 1064 and 1120 require that the Defendants have already procured a registered mark. *See* 15 U.S.C. §§ 1064, 1120; *Breeze Smoke LLC v. Trucenta Holdings LLC*, 2021 WL 7707758, at *2–3 (E.D. Mich. Dec. 14, 2021); *In re Bose Corp.*, 580 F. 3d 1240, 1243 (Fed. Cir. 2009) (Section 1064); *Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152, 160 (D.D.C. 2007) (Section 1120).  But Defendants here do not possess a registered mark but are only the owners of an application (that also remains pending to this day).  And, as stated above, this Court has no authority under Section 1119 as interpreted in *BBK Tobacco* either because Plaintiffs are similarly not the owners of a registered mark, but rather still pending trademark applications.  Further, the Complaint does not adequately plead a common-law fraud[19] claim because there are no facts from which it can be fairly concluded that at the time the Complaint was filed the USPTO actually relied on any false statements submitted by Defendants—indeed, the USPTO has not yet ruled on Plaintiffs' and Defendants' applications.  For these reasons, the undersigned recommends the Court deny Plaintiffs' motion for default judgment as to Count V.

However, given that cybersquatting of the "Tekever.com" domain is the crux of this suit and this Motion for Default Judgment, the undersigned instead finds it appropriate and consistent with the liberal principles of construction of the Federal Rules of Civil Procedure to consider Count

---

[19]    To state a claim for fraud, the claimant must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Chistoni v. HSBC Bank USA, N.A*, No. 1:17-cv-00315, 2017 WL 1963902, at *5 (E.D. Va. May 11, 2017) (quoting *Vitol, S.A. v. Primerose Shipping Co*., 708 F.3d 527, 543 (4th Cir. 2013)).

V as seeking an "additional remedy for a violation of [Section 1125(c)] . . . In other words . . . Count V will not be construed as an additional count, but only as additional facts and relief for the court to consider as they pertain to the alleged violations of § 1125 under Count I." *Breeze Smoke*, 2021 WL 7707758, at *1–3 (permitting and interpreting amendment of counterclaims to allege fraud on USPTO as request for § 1116 injunctive relief rather than inapplicable § 1119 relief request or § 1120 claim over arguments that addition of counterclaim would be futile and not survive a Rule 12(b)(6) motion since allegedly fraudulently procured marks were not actually registered); *see* FED. R. CIV. P. 8(e) ("Pleadings must be construed so as to do justice."); *Minger v. Green*, 239 F. 3d 793, 799 (6th Cir. 2001) (in 12(b)(6) context, "the rules require that we not solely rely on labels in a complaint, but that we probe deeper and examine the substance of the complaint"); *Tolle v. Carroll Touch, Inc.*, 977 F. 2d 1129, 1134 (7th Cir. 1992) ("a complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 8 . . . a complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as 'relief is possible under any set of facts that could be established consistent with the allegations'"); *De Sole v. U.S.*, 947 F. 2d 1169, 1171 (4th Cir. 1991) (in the 12(b)(6) context, "liberal construction in favor of the plaintiff is mandated" and "the failure to identify the provision permitting recovery is not fatal").

## VI.    Default Judgment: Requested Relief

The undersigned, having determined that Plaintiffs have satisfied all statutory and procedural requirements necessary to obtain a default judgment as to Count I, now turns to Plaintiffs' request to transfer ownership and control of the "Tekever.com" domain name to Plaintiffs and for an order from the Court directing Defendants to abandon their application for the "TEKEVER" mark, as well as for the USPTO to abandon or otherwise deem Defendants'

application abandoned.  (Compl. ¶ 67; Compl. Prayer for Relief; Mem. Supp. at 13–15, 18).

Pursuant to 15 U.S.C. § 1125(d)(1)(C), "[i]n any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." Having established a violation of the ACPA, Plaintiffs should be granted their requested relief of transfer of the "Tekever.com" domain to Plaintiffs, as expressly permitted by 15 U.S.C. §§ 1125(d)(1)(C).  *See Int'l Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A Monaco*, 192 F. Supp. 2d 467, 490 (E.D. Va. 2002).

Further, the undersigned has considered Plaintiffs' allegations in support of Count V in finding that Defendants have committed cybersquatting in violation of the ACPA in Count I, and as further requests for relief with respect to Count I, as discussed *supra*. However, the undersigned finds that none of the Plaintiffs' requested relief regarding abandonment of Defendants' application for the "TEKEVER" mark (pursuant to this Court's power under Section 1116 or otherwise) is appropriate to remedy the violation of Count I.[20]  To obtain a permanent injunction in the Fourth Circuit, Plaintiffs must show: (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between Plaintiffs and Defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Christopher Phelps & Assocs.*, *LLC v. Galloway*, 492 F. 3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 338, 391 (2006)).

---

[20]     As previously discussed, to the extent that Plaintiffs request some form of abandonment of application as relief for the fraud claim asserted in Count V, the undersigned finds such basis for relief inappropriate as Count V itself does not adequately state a claim upon which relief may be granted.

With regard to the second factor,[21] Plaintiffs have already established that a domain transfer pursuant to Section 1125(d)(1)(C) is warranted.  That transfer, affected through an order directed towards the *registrar* of the "Tekever.com" domain name, is adequate to definitively put the matter and harms of cybersquatting under the facts of this case to rest, regardless of whether Mr. Sinogas (the *registrant*) is personally responsive to the powers of this Court.  (Dkt. 77 at 2).  Indeed, while there are "legion[s]"[22] of cases recognizing the power of federal courts to order abandonment of a trademark application under Section 1116(a), the undersigned is aware of no case in which an order of abandonment of any sort is issued to remedy a *standalone* violation of the ACPA that is unaccompanied by a claim, i.e., for trademark infringement generally, that would not be resolved by a domain transfer.[23]  This is significant because the scope of the relief that Section 1116(a) allows courts to afford is limited to *only* to the prevention of violations of registered marks and specific subsections of Section 1125—not common law trademark infringement more generally.  Plaintiffs cite the decision of this Court in *Am. Online, Inc. v. Mohapatra et al.* as providing an example of an "order directing Defendants to abandon the pending application . . . in like circumstances," but *Mohapatra* does not support their position as to the necessity of such relief because it too involved a default judgment on claims of trademark infringement and unfair

---

[21]     The undersigned takes no position as to whether Plaintiffs have established an irreparable injury for purposes of the injunctive relief analysis, as Plaintiffs fail to satisfy the second factor regardless.

[22]     *Sevex*, 2007 WL 9702302, at *6.

[23]     The undersigned acknowledges that "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F. 2d 1175, 1180 (9th Cir. 1988). However, the lack of adequate remedy that underlies such observations is not present in this case, where the undersigned finds that domain transfer pursuant to Section 1125(d)(1)(C) is appropriate.

competition *in addition* to cybersquatting. *See* No. 1-cv-05-535-CMH-TRJ, 2006 WL 5363179, at *1 (E.D. Va. July 31, 2006), *affirmed* 208 F. Appx. 196, 197 (4th Cir. 2006); 208 F. Appx. at 197. Moreover, to the extent that Plaintiffs may be suggesting that Defendants will use their application before the USPTO in an attempt to regain control over the "Tekever.com" domain, contrary to an order of this Court directing the transfer of the domain to Plaintiffs, the undersigned trusts the findings contained herein, including the finding of bad faith by Defendants, will prevent any such holding by the USPTO.[24]  (Dkt. 77 at 2).

Accordingly, the undersigned does not find that any further equitable injunctive relief, with respect to abandonment of Defendants' application for the "TEKEVER" mark, is necessary to "prevent a violation under subsection (a),[25] (c), or (d) of [15 U.S.C. § 1125]." 15 U.S.C. § 1116.

## VII.    Dismissal of Counts II, III, and IV

Plaintiffs' request for dismissal of Counts II, III and IV is predicated on the Court granting Plaintiffs' Motion for Default Judgment on Counts I and V.  The undersigned recommends the Court grant Plaintiffs' Motion for Default Judgment as to Count I but not as to Count V.  The impact of this recommendation is that Plaintiffs' request for an order requiring the Defendants to abandon their application for the "TEKEVER" mark should be denied because it is beyond the

---

[24]    The undersigned observes that Defendants' counsel also withdrew from representing Defendants in their pending application and apparently have not been replaced. *See supra* note 7. Additionally, while a grant of default judgment in this Court has no issue preclusive effect, the undersigned believes that this recommendation and the record as a whole would suggest that Defendants' trademark application before the USPTO has little merit. The July 23, 2023 injunction of the Lisbon Commercial Court against Mr. Sinogas suggests the same and provides further assurances against any potential future usurpation of the "Tekever.com" domain by Defendants.

[25]    Although Count II of the Complaint is for false association in violation of Section 1125(a), the undersigned takes no position as to whether injunctive relief is necessary to prevent a violation of Section 1125(a) because Plaintiffs have moved for default judgment on only Counts I and V of the Complaint.

scope of Count I and Count V fails to sufficiently state a claim upon which relief can be granted. Therefore, it is recommended that the Court order Plaintiffs to move within 21 days of the Court's ruling on the instant Motion for Default Judgment to either seek default judgment on Counts II, III, and IV or move to dismiss those counts.

## VIII.    Dismissal of Defendants' Counterclaims

In addition to seeking default judgment on Counts I and V of the Complaint, Plaintiffs also request that the Court dismiss Defendants' counterclaims, given Defendants' absence from the case and their repeated failures to comply with the Court's orders. The undersigned agrees and recommends that the counterclaims be dismissed accordingly.

Federal Rule of Civil Procedure 41(b) (made applicable to counterclaims by way of Rule 41(c)) provides that "if the [counter-plaintiff] fails to prosecute or comply with these rules or a court order, a [counter-defendant] may move to dismiss the action or any claim against it."  In addition to this statutory authorization, "a district court retains an 'inherent power' to dismiss for failure to prosecute." *Johnson v. Robert Shields Interiors, Inc*. 2016 WL 2739270, at *3 (E.D. Va. May 11, 2016) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).  The Court must examine four factors to determine whether the "harsh sanction of dismissal with prejudice is required": (1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a drawn out history of deliberately proceeding in a dilatory fashion, and (4) the existence of a sanction less drastic than dismissal. *Id.* at *4 (citing *Chandler Leasing Corp v. Lopez*, 669 F.2d 919, 920 (4th Cir. 1982)).  The undersigned finds that all four factors favor dismissal of the Defendants' counterclaims.

First, responsibility for Defendants' failure to comply with this Court's warnings and orders, as well as their failure (by voluntarily withdrawing from this case) to further prosecute their

counterclaims lies solely with Defendants.  Despite being present personally and on behalf of Tekever, Inc. (of which he is the founder and owner)[26] at the undersigned's hearing on defense counsels' Motion to Withdraw on May 10, 2024, Mr. Sinogas never complied with the undersigned's verbal and written orders to appear at the May 24th status conference and retain new counsel for Tekever, Inc. (Dkt. 55).  Neither Defendants nor any substitute counsel appeared at the hearing before the undersigned on May 24, 2024 (Dkt. 59), nor did they appear before the District Judge at the twice-continued final pretrial conference on June 7, 2024. (Dkt. 66). Defendants also did not make any pretrial filings as required by the District Judge's January 3, 2024 Scheduling Order.  (Dkts. 31, 66, 67-1 ¶ 11).  There is no indication that any of Defendants' failures were forced by external circumstances, such as the injunction entered against Mr. Sinogas by the Lisbon Commercial Court on July 13, 2023. (Dkt. 25 at 3).

Additionally, the prejudice that Defendants have caused Plaintiffs is significant, as they have "delay[ed] this case, forcing [Plaintiffs] to incur the expense of filing additional motions," and "wasting [Plaintiffs'] time by not appearing for the final pretrial conference and the [May 24th status conference]." *Johnson*, 2016 WL 2739270, at *4 (recommending dismissal under Rule 41(b)).  Plaintiffs are further prejudiced from the added time during which the disposition of the "Tekever.com" domain remains undecided in this case and the risk associated with that lack of certainty and finality, although the undersigned notes that these considerations are somewhat tempered by the Lisbon Commercial Court's July 13, 2023 injunctions against Mr. Sinogas. (Dkt. 25 at 3).

These and other actions of Defendants also present significant evidence of deliberately

---

[26]    *See* Amend. Ans. Counterclaim ¶ 10; *see also* Compl. ¶ 38. By virtue of his control of Tekever, Inc., it is clear that Mr. Sinogas is not only personally responsible for his own failures, but also that of Tekever, Inc.

proceeding in a dilatory fashion. Notably, during discovery, Defendants initially made an incomplete production of documents to Plaintiffs, despite Defendants' counsel apparently confirming that "Defendants had generally agreed to produce requested documents"— "[Defendants'] [c]ounsel had no explanation for why the documents had not already been produced, other than to say that he has not recently heard from his clients." (Dkt. 46 at 2, 6). Defendants' failure forced Plaintiffs to file a motion to compel, to which Defendants did not voice any opposition, again wasting Plaintiffs' and this Court's time and resources. (Dkt. 46, 50). That Mr. Sinogas insisted that it would be "legally impossible" for him to be in the U.S. on the dates of his noticed depositions (which the undersigned ordered him to attend)—even producing a signed statement from a Portuguese lawyer to substantiate that impossibility—and then sat for his depositions on the originally requested dates without any further explanation is also concerning and suggestive of attempts at intentional delay. (Dkts. 50 at 1; 70-1 at 1; 70-2 at 8; 70-3 at 1).

Finally, the undersigned finds that there is no appropriate sanction less drastic than dismissal here, given Defendants' established and continuing disregard for the warnings and orders of this Court, as well as the seriousness of Plaintiffs' claims and potential legal consequences that may flow from them. *Johnson*, 2016 WL 2739270, at *4.

As all four factors favor dismissal of Defendants' counterclaims, the undersigned recommends that the counterclaims be dismissed.

## IX.   Recommendation

For the reasons outlined above, the undersigned United States Magistrate Judge recommends the Court:

- **GRANT** default judgment against Defendants Pedro Sinogas and Tekever, Inc. with respect to Plaintiffs' claim for violation of the Anti-Cybersquatting Consumer

Protection Act, 15 U.S.C. § 1125(d) (Count I);

- **ORDER** Pedro Sinogas, as the current registrant of the domain name "Tekever.com," to take all steps necessary to transfer the registration, ownership, and control of "Tekever.com" to Tekever Holdings, S.A.;

- **ORDER** NameCheap, Inc., as the current registrar of the domain name "Tekever.com," to take all steps necessary to transfer the registration, ownership, and control of "Tekever.com" to Tekever Holdings, S.A;

- **GRANT** Plaintiff's Motion to dismiss Defendants' counterclaims with prejudice;

- **DENY** Plaintiffs' Motion for Default Judgment as to Count V of the Complaint;

- **DENY** Plaintiffs' request for an order compelling Pedro Sinogas and Tekever, Inc. to abandon U.S. Trademark Application No. 97/253,347;

- **DENY** Plaintiffs' request for an order compelling the United States Patent and Trademark Office to abandon U.S. Trademark Application No. 97/253,347 or otherwise deem that application as abandoned;

- **ORDER** Plaintiffs to move within 21 days of the Court's ruling on the instant Motion for Default Judgment to either seek default judgment on Counts II, III, and IV or move to dismiss those counts; and

- **ORDER** the dismissal of all John Doe defendants from this case.

## X.    Notice

Plaintiffs are directed to serve by e-mail and registered mail a copy of this Report and Recommendation on the registrar of the "Tekever.com" domain and on Defendants within seven (7) days of entry of this Report and Recommendation.  Plaintiffs are further directed to file a declaration certifying service of this Report and Recommendation on the registrar and the

Defendants via the Court's electronic filing system within ten (10) days of entry of this Report and Recommendation.  The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to file timely objections waives appellate review of any judgment or decision based on this Report and Recommendation.

*William E. Fitzpatrick*

WILLIAM E. FITZPATRICK
UNITED STATES MAGISTRATE JUDGE

September 18, 2024
Alexandria, Virginia